**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**

**875 THIRD AVENUE**

**NEW YORK, NEW YORK 10022**

**(212) 603-6300**

**FAX (212) 956-2164**

Fred B. Ringel
(212) 603-6301
fbr@robinsonbrog.com

April 19, 2021

**Via Email**
The Honorable Nancy Hershey Lord
United States Bankruptcy Judge
United States Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, NY 11201-1800

RE:    In re Admiral Property Group LLC, Case No. 20-42826 (NHL)

Dear Judge Lord:

I am writing to the Court to request a conference regarding the following circumstances regarding our continuation as counsel to the Debtor's estate.

On April 16, 2021, I received an email from Peter Evangelista, the sole member of the Debtor, advising me that he had decided to terminate Robinson Brog as Admiral's counsel and directing me to withdraw Debtor's motion to approve bidding procedures for a sale under the plan as well as to withdraw the Debtor's Disclosure Statement and Plan of Liquidation. No alternative to the sale was offered or disclosed. At approximately the same time, The Kantrow Law Group filed a notice of appearance in this case on behalf of the Debtor, although such firm has never been authorized to represent the Debtor. These actions were taken after we learned in early April that Mr. Evangelists had relieved the entity who had been managing the Debtor since July 2020, GCRE Realty Advisors LLC. A hearing on the bidding procedures motion and for approval of the Disclosure Statement is scheduled for April 27, 2021.

There has been a substantial amount of work undertaken in connection with the Debtor's efforts to sell the property owned by the Debtor and the decision to throw out the sale, which was accompanied by a 20% cash deposit after months of marketing the property, with no disclosed alternative or explanation as to what was deficient with the sale, seems, at best rash, at worse misinformed. The Debtor's broker, Rosewood Realty Group, had over 200 expressions of interest in response to its marketing campaign and walked through the property with 22 different groups. The stalking horse bid for $2,150,000 plus payment of a $129,000 buyer's premium is by far the highest and best offer received to date.

There is no question that jettisoning the sale will irreparably damage the relationship between the senior secured creditor and the Debtor's estate. The senior lender waived its right to seek stay relief against the Debtor, a single asset real estate debtor, and extended the time before it could seek stay relief from October 2020 to May 2021 solely to

permit the Debtor to effectuate a sale. Although on the cusp of completing the sale and confirming the plan, the refusal to pursue the plan and sale will dramatically delay at best and eliminate, at worst, the secured creditor's ability to get paid quickly. Their concessions and waiver of rights will have been for nothing. Failing to proceed with the sale cannot bode well for the relationship moving forward.

We believe that confirming the Plan and consummating the sale to the stalking horse bidder or a higher or better offeror is we believe, in the estate's best interests. The sale will allow the Debtor to maximize the return to creditors. Under the Plan, the secured creditor gets paid an acceptable distribution; administrative creditors get paid in full and unsecured creditors share in a modest fund of money. We believe the sale is in the best interest of the estate and maximizes value to creditors.

From the Debtor's perspective jettisoning the sale does not appear consistent with the fiduciary duties to the estate  We do not think sabotaging the sale is appropriate in this case after months of marketing effort.

It undoubtedly would have been much easier for my firm to walk away from this situation and withdraw from this case. But when this firm was retained as counsel to the Debtor's estate, it was implicit that this firm would fight for the best result for the Debtor's estate in this case. We represent the estate, not Mr. Evangelista's interests, as the Debtor's equity security holder. Allowing the sale to be undermined without any explanation or disclosed alternative is antithetical to what we perceive as our duties to the Debtor's estate. Accordingly, we request a conference with the Court to determine the best direction for the Debtor's estate under the circumstances.

                Respectfully submitted,

                /s/ Fred B. Ringel

                **Fred B. Ringel**

**Cc:**    Peter Evangelists
        Fred Kantrow
        Dan Zinman
        Nazar Khodorovsky
        Greg Corbin