The Kantrow Law Group, PLLC
Attorneys for Admiral Property Group LLC
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791
516 703 3672
fkantrow@thekantrowlawgroup.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:                                                                          Chapter 11
                                                                                       Case No. 20-42826-nhl
ADMIRAL PROPERTY GROUP LLC,

                Debtor.
-----------------------------------------------------------------X

## DEBTOR'S RESPONSE TO THE OBJECTION INTERPOSED BY ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK, P.C. TO THE DEBTOR'S APPLICATION SEEKING ENTRY OF AN ORDER APPROVING BID PROCEDURES AND STALKING HORSE APPROVAL

TO:    HON. NANCY HERSHEY LORD
         UNITED STATES BANKRUPTCY JUDGE

        Admiral Property Group LLC, the debtor and the debtor in possession (the "Debtor"), by and through its counsel, The Kantrow Law Group, PLLC, respectfully submits this as and for its response (the "Response") to the objection (the "Objection") interposed by Robinson Brog Leinwand Greene Genovese & Gluck, P.C. ("Robinson Brog") to the Debtor's application (the "Application") seeking the entry of an Order approving proposed bid procedures (the "Bid Procedures") and approving the proposed stalking horse contract entered into with John Pizzirusso ("Pizzirusso") and proposed break-up fee (the "Break-up Fee") and states as follows:

        1.    It is unfortunate that Robinson Brog believes that the Debtor has taken an unnecessary change of course that "does not benefit the estate or its creditors." In fact, the Debtor avers that the change of course does in fact benefit the estate and creditors. The facts are simple enough. The Debtor determined to enter into a stalking horse contract with Pizzirusso for more money than the prior stalking horse contract with Jerry Harary ("Harary"); that pays a reduced

Break-up Fee in the event that Pizzirusso is not the successful purchaser at auction; and thus ensures more money to the creditors of the estate.

2. It is difficult to address the speculative arguments asserted by Robinson Brog. For example, Robinson Brog argues that Pizzirusso "materialized out of thin air" which is not the case. Pizzirusso was aware of the Debtor's interest in the real property and determined that he had an interest in making an offer to purchase. Pizzirusso is represented by his own counsel and the Debtor believes that allegations about Pizzirusso, his interest in the property and his ability to close on the proposed transaction, are all better addressed by his counsel.

3. Robinson Brog further asserts that Pizzirusso is unknown to Rosewood Realty Group ("Rosewood"), the Debtor's retained real estate advisor. Assuming that is a true statement, it is difficult to understand why that would matter. A review of the Debtor's prior application to approve the Harary stalking horse agreement as well as the prior plan and disclosure statement proffered by the Debtor when Robinson Brog served as Debtor's counsel, indicates that there was no disclosure regarding Harary or its ability to close any proposed financial transaction. While that is not dispositive of the issue, the Debtor believes that Pizzirusso, who has already placed a deposit in the amount of $235,000, currently in escrow, has the financial wherewithal to close the transaction. The $235,000 serves as a non-refundable deposit to protect the estate from any failure to close. Moreover, Rosewood has not raised any objection to the Debtor's proposed sale to Pizzirusso and its six (6) percent buyer's premium is certainly contingent upon the closing of the transaction.

4. Robinson Brog argues that the estate now has a risk associated with the escrow of $75,000 in connection with the payment of transfer tax. Robinson Brog knows that the Debtor has proffered a plan that provides that the proposed sale of the property is exempt from transfer tax

pursuant to section 1146 of the Bankruptcy Code. The sole reason for agreeing to escrow the potential transfer tax was to satisfy any objections raised by a title company at closing. The Debtor and Pizzirusso believe that no transfer tax will be due and owing provided the Debtor's proposed plan is confirmed by this Court. However, in the event that the closing takes place *prior* to the entry of an Order of this Court confirming the Debtor's plan, the title company would likely seek to ensure the payment of any transfer tax. Accordingly, upon the confirmation of the plan, the escrow shall be released to the Debtor.

5. Robinson Brog avers that Harary shall be entitled to seek an administrative expense claim against the Debtor's estate in the amount of $64,500 for breach of contract for failing to present the stalking horse contract to this Court for approval. However, the stalking horse contract fails to provide for such a remedy. There is no paragraph that demands that the Debtor present the Harary stalking horse contract to this Court. The agreement provides at paragraph 18.4(c) that the "Contract is subject to and contingent on the Bankruptcy Court entering the Sale Order (as defined below) approving this proposed sale of the Premises, subject to higher or better offers." It further provides that, "[I]f said Sale Approval Order is not obtained, then this Contract shall be terminated, will be of no further force or effect, the Downpayment [sic] will be returned to Purchaser, and neither party will have any further obligation or liability to the other."

6. While Robinson Brog offers in footnote 4 of its Objection, two cases to support an argument that Harary will be entitled to an administrative expense claim, the Debtor's review of the two cited cases fail to establish any right to payment of an administrative expense claim. *In re Wood,* 2008 WL 2244972 (Bankr. E.D. Va. 2008) examined the enforceability of specific terms in a letter of intent in connection with the sale of the debtor's radio stations. *In re Frye*, 216 B.R. 166 (Bankr. E.D. Va. 1997) examined the responsibility of parties in connection with an

application to compromise a controversy under Rule 9019 of the Bankruptcy Rules. These cases examined issues different from one that may be before this Court. In addition, assuming *arguendo* that Harary sought to assert a claim for an administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code, Harary would have to demonstrate that there was a post-petition transaction between the claimant and the estate, and those expenses yielded a benefit to the estate. *See, e.g., Goody's Family Clothing,* 610 F.3d 812, 818 (3d Cir. 2010); *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976). The Debtor does not believe that Harary would be able to satisfy the difficult burden. The Debtor assumes that Robinson Brog raises this issue as Harary lacks standing to make this argument on its own behalf at this juncture.

7. Robinson Brog's assumptions are therefore, misplaced. There is no unnecessary payment of $75,000 transfer tax; there is no $64,500 administrative claim; the real estate taxes will be prorated at closing. Thus, its often-repeated argument that the Pizzirusso proposed stalking horse is not a higher/better offer, is simply put, wrong. The transfer tax argument is illusory. The alleged claim of Harary is illusory. The real estate tax payment is prorated between the Debtor and the buyer at closing.[1] Thus, the stalking horse bid of $2,350,000 yields a net to the estate of $2,350,000.

8. Robinson Brog further argues that the Debtor should not be allowed to choose which administrative expenses it will pay and which ones it will not. The escrow for the transfer tax is not a "choice" made by the Debtor. Rather, it is a customary cost of sale. Notwithstanding the fact that Robinson Brog agues throughout its objection that the Debtor's payment of the transfer tax is because it has not confirmed a plan, the proposed sale is part of the proposed plan. Again,

---

[1] The Debtor notes that a review of the most recent real estate tax bill generated by New York City, reclassified the value of the property as a completed project. Real Estate taxes had been based upon the fact that the project was not complete. The Debtor does not understand why New York City reclassified the project at this juncture.

upon confirmation of the chapter 11 plan, the Debtor shall advise that the section 1146 exemption from transfer tax is applicable and shall seek the release of the escrow of the transfer tax.

9. Robinson Brog argues that Pizzirusso should be denied the modest two (2) percent Breakup Fee despite the fact that it argued extensively in favor of a higher breakup fee for Harary under a theory that offering such a breakup fee delivered value to the estate. Now, Pizzirusso has agreed to serve as the Stalking Horse at a higher/better offer and it should be denied the Break-up Fee. The Debtor agrees with Robinson Brog in its citation to *In re Integrated Resources,* 135 B.R. 746 (Bankr. S.D.N.Y. 1993) insofar as breakup fees encourage parties to enter into stalking horse agreements knowing their bid will be used to attract higher offers. That is precisely what Pizzirusso is doing for the estate – attracting higher offers. It is disingenuous to argue that the Break-up Fee offered to Pizzirusso will chill bidding, but the break-up fee promised to Harary did not chill bidding.

10. Once again, Robinson Brog demands that the Debtor be required to escrow funds to protect the creditors of the estate. The Robinson Brog unliquidated claim is just that, an unliquidated claim. This Court has not yet considered any application for compensation for Robinson Brog and the Debtor has stated, unequivocally, that it shall pay to Robinson Brog any amount that a court awards on a final basis to it for compensation. It is not for Robinson Brog to argue to protect the interests, if any, of Harary. Thus, demanding that the Debtor escrow for a claim not even asserted against the estate, which may never be asserted against the estate, is inappropriate. Rosewood is clearly entitled to the buyer's premium which is paid by the successful buyer and is not the estate's responsibility. Thus, there is no reason for the Debtor to escrow for any buyer's premium due to it. The fees due the United States Trustee are statutory in nature and

the Debtor's plan provides that it is statutorily required to pay those amounts. Directing the Debtor to escrow that amount is likewise inappropriate at this time.

11.  As to Robinson Brog's argument that the Debtor has failed to provide information regarding Pizzirusso, that too is somewhat disingenuous. Pizzirusso is represented by well respected and competent bankruptcy counsel, well known to this Court. Moreover, it has posted a deposit in the amount of $235,000. To accept Robinson Brog's arguments the Court would necessarily have to conclude that Pizzirusso was willing to put up $235,000 and forfeit that amount in the event that it failed to close on the purchase. Whether Pizzirusso has experience as a real estate developer is of no moment. When Pizzirusso closes on the transaction, what he decides to do with the property is his issue and not an issue to the creditors as there are no payments to be received after the closing. Robinson Brog has asked for proof of the down payment, which the Debtor's counsel is holding in escrow. It should not be lost on this Court that when the Debtor asked about the funds being held by Robinson Brog in its escrow account, received from Harary, the Court accepted the representation of counsel that the funds were in escrow. It would appear that Robinson Brog is unwilling to accept such a representation from Debtor's counsel. Robinson Brog served a document demand seeking proof of the escrow deposit, which shall be provided as demanded.

12.  As to Robinson Brog's demand that the proposed Bid Procedures be amended, the Debtor objects and questions why they should be rewritten. Robinson Brog first proffered bid procedures that made certain that the Debtor and its principal and his family members be precluded from making an offer to purchase. The reasons for that were unknown. Now, Robinson Brog is again seeking to make it difficult, if not impossible, for said parties to tender a bid. The Debtor is uncertain as to what Robinson Brog is attempting to do in connection with rewriting the bid

procedures. Clearly, the Debtor wants to maximize the value of the property for sale. Moreover, Robinson Brog asserts that Harary should be deemed a qualified bidder. Again, Harary has not sought any relief. The Debtor cannot understand why Robinson Brog is so anxious to see Harary be deemed a qualified bidder. That being said, if Harary seeks to bid at the auction, anything that increases the value of the property is welcome.

13. Finally, Robinson Brog offers a conclusion to this Court that the Debtor is attempting to avoid confirmation of a plan. They argue that "without knowing his [Pizzirusso] relationship to the Debtor or the senior mortgage holder, the entire transaction become suspect unless there are substantial modifications to the bid procedures." This argument is completely speculative. There is nothing before this Court that would provide a basis for this Court to conclude that this is not an arm's length transaction. There is no intention by this Debtor to avoid proceeding with the proffered plan. However, Robinson Brog concludes, "not proceeding with plan confirmation has been seriously contemplated by the Debtor." That is simply not the case.

14. Robinson Brog uses its status as an administrative creditor to attempt to continue to direct the trajectory of this case. While the Debtor understands Robinson Brog's right to be heard as an administrative creditor, the Debtor is a fiduciary to all creditors and understands fully its obligations. The Debtor respectfully requests that its Application be approved and the objections be overruled in their entirety.

WHEREFORE, the Debtor respectfully requests that this Honorable Court enter the Debtor's proposed Order allowing for the sale and denying the objections together with such other and further relief this Court deems just and proper under the facts and circumstances.

Dated: Syosset, New York
      July 1, 2021

>
> The Kantrow Law Group, PLLC
> Attorneys for the Debtor
>
> BY:   S/Fred S. Kantrow
>       Fred S. Kantrow
>       6901 Jericho Turnpike, Suite 230
>       Syosset, New York 11791
>       516 703 3672
>       fkantrow@thekantrowlawgroup.com